UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-03706-RGK (PJWx) | Date | August 16, 2016 |
|---|---|---|---|
| Title | *Kaloud, Inc. v. Shisha Land Wholesale, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant's Motion for Reconsideration (DE 123)

**I.   INTRODUCTION**

On May 15, 2015, Kaloud, Inc. ("Plaintiff") filed a Complaint against Shisha Land Wholesale, Inc. ("Defendant") alleging: (1) Trademark Infringement, (2) Trademark Counterfeiting, (3) False Designation of Origin, (4) Unfair Competition, (5) Common Law Unfair Competition, (6) Copyright Infringement, (7) State Counterfeiting.

On April 26, 2016, this Court granted summary judgment in favor of Plaintiff on all of its claims except the copyright infringement claim. The uncontroverted evidence showed that on April 10, 2015, Defendant sold 20 counterfeit units of Plaintiff's Kaloud Lotus ("Lotus"), an innovative hookah charcoal housing unit with a heat management system designed to reduce ash and ultra-fine particles.

Because the parties on summary judgment did not raise any issues as to which specific marks were infringed, the Court did not specify the registration numbers, dates, or product categories of the counterfeited marks. Instead, the Court held that Defendant had infringed and counterfeited Plaintiff's word marks "Kaloud" and "Kaloud Lotus" as well as a design mark consisting of the word "Kaloud" in a stylized font situated below a wisp of curling smoke.

On June 7, 2016, this action proceeded to jury trial to determine whether Defendant willfully infringed and counterfeited Plaintiff's marks as well as the amount of damages to be awarded. Before trial, neither party disputed that five of Plaintiff's marks were at issue. The marks are listed below.

| Registration No. | Mark | Registration Date | Registered Goods |
|---|---|---|---|
| 4,703,536 | Kaloud (text) | March 17, 2015 | Flavoring for hookah base water |
| 4,703,537 | Kaloud (design) | March 17, 2015 | Flavoring for hookah base water |
| 4,758,255 | Kaloud (text) | June 23, 2015 | Hookah charcoal container |
| 4,762,725 | Kaloud (design) | June 30, 2015 | Hookah charcoal container |
| 4,810,850 | Kaloud Lotus (text) | September 15, 2015 | Hookah charcoal container |

For ease of reference, the Court divides the five marks into two groups, categorized by product. The first two marks (Reg. Nos. '536 and '537) will be referred to as the "Flavor Marks," and the latter three marks (Reg Nos. '255, '725, and '850) will be referred to as the "Charcoal Container Marks."

At trial, Plaintiff sought statutory damages for counterfeiting of the five marks. On June 8, 2016, the jury found that Defendant's counterfeiting was willful and returned a verdict of $400,000 per infringed mark for a total of $2,000,000 in damages. After trial, Defendant moved for directed verdict, advancing two theories to challenge the award of statutory damages.

First, Defendant argued that the Flavor Marks were ineligible for statutory damages because they were not registered for the type of product that was actually counterfeited. The Court accepted this argument and granted the motion for directed verdict as to damages premised on the Flavor Marks. (Order Granting in Part Def.'s Mot. Directed Verdict at 3, ECF No. 121.) As a result, the Court reduced the jury award by $800,000 to reflect the dismissal of statutory damages stemming from the two Flavor Marks. (Order Granting in Part Def.'s Mot. Directed Verdict at 4, ECF No. 121.)

Next, Defendant maintained that the Charcoal Container Marks were also ineligible for statutory damages because they were not registered at the time of the counterfeiting. The Court denied the motion for directed verdict on this second theory and explained that Defendant's argument is actually a challenge to the summary judgment order, not the jury verdict. (Order Granting in Part Def.'s Mot. Directed Verdict at 4, ECF No. 121.) As such, the proper vehicle is not a motion for directed verdict, but a motion for reconsideration of the summary judgment order.

Presently before the Court is Defendant's Motion for Reconsideration of the Court's summary judgment order. For the following reasons, the Court **GRANTS** Defendant's motion.

## II.     JUDICIAL STANDARD

"Rule 59(e) amendments are appropriate if the district court '(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1022 (9th Cir. 2003) (quoting *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993)).

### III.     DISCUSSION

####     A.     Timing of the Motion for Reconsideration

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Because Defendant seeks reconsideration of the Court's summary judgment Order, Plaintiff argues that the operative date for entry of judgment is April 26, 2016, the date on which the Court issued its Order granting summary judgment as to liability. Given that Defendant did not file its motion for reconsideration until July 12, 2016 (more than 28 days after the summary judgment order), Plaintiff argues that Defendant's motion is untimely. The Court disagrees.

An order in which the court grants summary judgment "limited to the issue of [a party's] liability . . . where assessment of damages or awarding of other relief remains to be resolved" constitutes an interlocutory order—not a final judgment. *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976). Here, the Court's summary judgment order, which disposed of liability but not damages, was not a final judgment and did not trigger the 28-day deadline. Instead, final judgment in this case occurred on July 11, 2016, when the Court entered judgment on the verdict in Plaintiff's favor. Because Defendant filed its motion for reconsideration on July 12, 2016, the motion is timely.

####     B.     The Charcoal Container Marks

Defendant argues that statutory damages are only available where the plaintiff's mark was registered before the counterfeiting occurred. Because the three Charcoal Container Marks were registered in June and September 2015—*after* the only documented instance of counterfeiting occurred in April 2015—Defendant argues statutory damages premised on the these three marks are improper.

The Lanham Act provision authorizing statutory damages for counterfeiting states, "In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) . . . the plaintiff may elect . . . an award of statutory damages." 15 U.S.C. § 1117(c). The statutory language expressly references section 1116(d), which defines a "counterfeit mark" as:

> a counterfeit of a *mark that is registered on the principal register* in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered

15 U.S.C. § 1116(d)(1)(B)(i) (emphasis added). Defendant points to the emphasized language above and argues that the statutory definition of "counterfeit mark" requires the infringed mark to be registered on the principal register at the time of counterfeiting. Because the evidence in the record only revealed a single instance of counterfeiting, in April 2015, and the three Charcoal Container Marks were not registered until June and September 2015, Defendant argues that no counterfeiting actually occurred and statutory damages are improper.

Numerous district courts have disallowed statutory damages where the counterfeiting occurred before a mark was registered. *New Name, Inc. v. The Walt Disney Co.*, No. CV 07-5034, 2008 WL 5587487, at *6 (C.D. Cal. July 23, 2008) ("[M]any other courts have held that statutory damages are not retroactively available for infringement occurring between application and registration."); *Synergy Tech & Design Inc. v. Terry*, No. C 06-02073, 2007 WL 1288464, at *4 (N.D. Cal. May 2, 2007) ("[T]here is no potential for [plaintiff] to recover . . . for federal trademark infringement for conduct that occurred prior to the registration of the subject marks."); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1117

n.23 (S.D. Cal. 2012) ("Many courts have held that statutory damages are not retroactively available for infringement occurring between application and registration.").

Defendant's argument stands on solid legal ground. The Court, however, remains confounded as to why Defendant failed to advance this argument previously. A basic Westlaw or Lexis search would have revealed this legal theory, allowing Defendant to successfully challenge Plaintiff's counterfeiting claim at the summary judgment stage. Instead, Defendant waited until after a trial on damages to assert this contention, squandering the Court's and the opposing party's time and resources. At best, such a delay is attributable to a lack of diligence, at worst the delay suggests an attempt to sandbag Plaintiff and keep the meter running on attorney's fees.

Because the legal argument that Defendant now asserts was readily available at the time of summary judgment, the Court concludes that reconsideration is not proper based on intervening change in controlling law. Furthermore, reconsideration is not available based on newly discovered evidence, as Defendant has not asserted any such evidence. The only remaining basis for reconsideration, therefore, is clear error or manifest injustice.

Defendant argues that this Court committed clear error in its summary judgment order when it defined a "counterfeit mark" by reference to section 15 U.S.C. §1116(d)(1)(B)(ii), which only applies to marks associated with the United States Olympic Committee. (Order Granting Partial Summ. J. at 3 n.2, ECF No. 65.) Instead, the proper definition is found in 15 U.S.C. §1116(d)(1)(B)(i). The Court acknowledges that it cited the wrong statutory section when it relied on subsection (ii) rather than subsection (i), yet it is unclear how such a mistake relates to Defendant's present argument. As explained above, Defendant contends that it is not liable for counterfeiting because the counterfeited marks were not registered at the time of the wrongdoing. Assuming the Summary Judgment Order had cited the correct statutory section, this Court still would not have considered Defendant's current argument about timing of registration because Defendant never raised such a challenge. Therefore, Defendant has not demonstrated how the Court's error resulted in an improper holding or even how the Court's error relates to Defendant's present theory.

Despite Defendant's failure to previously raise this theory, the Court concludes that allowing the summary judgment order to stand would cause a manifest injustice. Here, the Charcoal Container Marks were clearly not registered until June 2015, after the date of counterfeiting (April 2015). 15 U.S.C. §1116(d)(1)(B)(I). Therefore, pursuant to the Lanham Act's legal definition, Defendant did not counterfeit. To hold otherwise would be to penalize Defendant for a violation that it did not legally commit. More importantly, imposing liability would result in the Court treating a non-existent trademark registration as if it were valid.

## IV.     CONCLUSION

The Court **GRANTS** the Motion for Reconsideration and concludes that Defendant is not liable for counterfeiting the Charcoal Container Marks. Accordingly, the Court vacates the remaining statutory damages award of $1,200,000 ($400,000 per mark x three marks) stemming from the Charcoal Container Marks.

**IT IS SO ORDERED.**

:

Initials of Preparer